No. 22-56206
_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
_____

KIM H. PETERSON, individually, as Trustee of the Peterson Family Trust dated April 14, 1992, and as Trustee of the Peterson Family Trust dated September 29, 1983; KIM FUNDING, LLC; ABC FUNDING STRATEGIES, LLC; ABC FUNDING STRATEGIES MANAGEMENT, LLC; KIM MEDIA, LLC; KIM MANAGEMENT, INC.; KIM AVIATION, LLC; AERO DRIVE, LLC; AERO DRIVE THREE, LLC; BALTIMORE DRIVE, LLC; GEORGE PALMER CORPORATION; KIM FUNDING LLC DEFINED BENEFIT PENSION PLAN; ANI LICENSE FUND, LLC; and LAURIE PETERSON,
*Plaintiffs-Appellants*,

v.

KRISTA FREITAG, Receiver for ANI Development, LLC, AMERICAN NATIONAL INVESTMENTS, INC., and their subsidiaries and affiliates; UNITED STATES SECURITIES AND EXCHANGE COMMISSION; and CHICAGO TITLE COMPANY
*Defendants-Appellees*.
_____

On Appeal from the United States District Court
for the Southern District of California
No. 3:19-CV-01628-LAB-AHG
Hon. Larry A. Burns (Ret.); Hon. Todd Robinson
_____

**APPELLANTS' MOTION TO STAY THE MANDATE PENDING THE FILING OF A PETITION FOR A WRIT OF CERTIORARI**
_____

| | |
|---|---|
| Rupa G. Singh (SBN 214542)* | Seanna R. Brown (NY Bar 4504551) |
| NIDDRIE \| ADDAMS \| FULLER \| SINGH LLP | BAKER & HOSTETLER LLP |
| 501 W. Broadway, Suite 800 | 45 Rockefeller Plaza |
| San Diego, CA 92101 | New York, NY 10111 |
| 858.699.7278; rsingh@appealfirm.com | 212.589.4230; sbrown@bakerlaw.com |

*Attorneys for Appellants* KIM PETERSON *et al.*

# TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** ........ 3

**INTRODUCTION** ........ 5

**LEGAL STANDARD** ........ 5

**DISCUSSION** ........ 7

**I. The Peterson Appellants' Petition for Writ of Certiorari Will Present Substantial Questions Warranting Supreme Court Review** ........ 7

A. There is a reasonable probability that the Supreme Court will grant certiorari, finding the important questions of federal law to be raised in the Peterson Appellants' petition sufficiently meritorious ........ 7

B. There is a "significant possibility" the Peterson Appellants will prevail on the merits because, in addition to conflicting with relevant Supreme Court jurisprudence, this Court's opinion deepens a split between the circuits regarding the propriety of bar orders ........ 11

**II. Good Cause Also Supports Staying the Mandate Because the Peterson Appellants Will Otherwise Face Irreparable Harm from the Likely Dismissal With Prejudice of the State-Court Actions that Are the Subject of the Bar Order Affirmed in this Court's Opinion** ........ 14

**CONCLUSION** ........ 15

**CERTIFICATE OF COMPLIANCE** ........ 16

**CERTIFICATE OF SERVICE** ........ 17

# **TABLE OF AUTHORITIES**

**CASES** Page

*American Gas Ass'n v. FERC,* 912 F.2d 1496 (D.C. Cir. 1990) .............................. 6

*Barefoot v. Estelle*, 463 U.S. 880 n.4 (1983) ........................................................ 6

*Books v. City of Elkhart*, 239 F.3d 826 (7th Cir. 2001) ..................................... 11, 15

*Bryant v. Ford Motor Co.*, 886 F.2d 1526 (9th Cir. 1989) ........................................ 6

*Digital Media Solutions, LLC v. South University of Ohio, LLC*,
   59 F.4th 772 (6th Cir. 2023) ............................................................................. 12

*Harrington v. Purdue Pharma*, 603 U.S. 204, __ (2024) ..................................... 8, 9

*Local No. 93 v. City of Cleveland*, 478 U.S. 501 (1986) ........................................ 10

*Matter of Zale Corp.*, 62 F.3d 746 (5th Cir. 1995) ................................................. 10

*Munaf v. Geren*, 482 F.3d 582 (D.C. Cir. 2007) ............................................... 10, 11

*SEC v. Cap. Consultants, LLC*, 397 F.3d 733 (9th Cir. 2005) ................................ 10

*SEC v. DeYoung*, 850 F.3d 1172 (10th Cir. 2017) .................................................. 13

*SEC v. Peterson*, 129 F.4th 599 (9th Cir. 2025) .................................................. 8, 11

*SEC v. Quiros*, 966 F.3d 1195 (11th Cir. 2020) ..................................................... 14

*Texas v. New Mexico*, 602 U.S. 943, ___ (2024) .................................................. 8, 9

*Times-Picayune Pub. Corp. v. Schulingkamp*,
   419 U.S. 1301 (1974) ............................................................................... 5, 6, 15

*United States ex rel. Chandler v. Cook Cnty.*,
   282 F.3d 448 (7th Cir. 2002) ............................................................................ 10

*Zacarias v. Stanford International Bank, Ltd.*,
   945 F.3d 883 (5th Cir. 2019) .......................................................................... 9, 13

## RULES

Fed. R. App. P. 41(b) ............................................................................................ 5

Fed. R. App. P. 41(d)(1) ....................................................................................... 5

Fed. R. App. P. 41(d)(2) .................................................................................. 5, 14

Fed. R. App. P. 41(d)(2)(B)(2) .............................................................................. 5

9th Cir. Rule 41-1 ........................................................................................... 6, 13

Sup. Ct. R. 10(c) .................................................................................................. 7

## OTHER AUTHORITIES

*Federal Court of Appeals Manual* § 34:13, at 924 (6th ed. 2013) ......................... 14

4

## INTRODUCTION

This Court's denial on May 7, 2025, of appellants Kim Peterson's *et al.* (the Peterson Appellants) petition for panel rehearing and rehearing *en banc* means its mandate must issue on or about May 14, 2025. *See* Fed. R. App. P. 41(b). However, this Court retains discretion to stay the issuance of its mandate pending the filing of a petition for a writ of certiorari upon a showing "that the petition would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(1). Because the Peterson Appellants satisfy both prongs of this test, they respectfully seek the maximum 90-day stay of the mandate to file their petition for a writ of certiorari. *See* Fed. R. App. P. 41(d)(2). Notably, if this Court grants a stay and the Peterson Appellants timely file a certiorari petition, "the stay continues until the Supreme Court's final disposition." Fed. R. App. P. 41(d)(2)(B)(2).

## LEGAL STANDARD

A petition for writ of certiorari presents a "substantial question" for purposes of staying the mandate under Rule 41 if there is (1) a "reasonable probability" that four members of the Supreme Court would consider the underlying issue "sufficiently meritorious" for the grant of certiorari or the notation of probable jurisdiction and (2) a "significant possibility" of reversal of the lower court's decision. *Times-Picayune Pub. Corp. v. Schulingkamp*, 419 U.S. 1301, 1305 (1974) (Powell, J., as Circuit Justice, in chambers). In describing a similar standard to

grant a defendant certificate of probable cause to file a writ of habeas corpus, the Supreme Court has explained that the "substantial question" standard is not so onerous as to require a conclusion that the movant will prevail on the merits:

> In requiring a "question of some substance", or a "substantial showing of the denial of [a] federal right", obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further.

*Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (internal quotations omitted).

To establish Rule 41's good cause prong, the Peterson Appellants must show that "a likelihood that irreparable harm will result if that decision is not stayed." *Times-Picayune Pub. Corp.*, 419 U.S. at 1305; *see also American Gas Ass'n v. FERC,* 912 F.2d 1496, 1519 (D.C. Cir. 1990) (granting stay of mandate so that the status quo would not have to be "unscramble[d]" until "the review process comes to a complete end."). This Court's policy is that, although a stay of the mandate pending the filing of a certiorari petition to the Supreme Court is not "granted as a matter of course", 9th Cir. R. 41-1, it also does not require a showing "that exceptional circumstances justify a stay." *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528 (9th Cir. 1989). Rather, the Comments to the Circuit Rules indicate that a stay is only denied for lack of good cause where the petition would be "frivolous or filed merely for delay." 9th Cir. R. 41-1.

6

For the reasons discussed, the Peterson Appellants satisfy the statutory factors and the policy considerations that warrant staying the issuance of this Court's mandate pending their filing of a non-frivolous certiorari petition.

## DISCUSSION

I. **The Peterson Appellants' Petition for Writ of Certiorari Will Present Substantial Questions Warranting Supreme Court Review**

    A. <u>There is a reasonable probability that the Supreme Court will grant certiorari, finding the important questions of federal law to be raised in the Peterson Appellants' petition sufficiently meritorious</u>

The Supreme Court is likely to grant a petition for a writ of certiorari when a United States Court of Appeals has: "decided an important question of federal law that has not been, but should be, settled by this Court, or has decided an important federal question in a way that conflicts with relevant decisions of [the Supreme] Court." Sup. Ct. R. 10(c). Here, this Court decided exceptionally important issues concerning fundamental due process rights that the Supreme Court has not squarely addressed or in a way that conflicts with relevant Supreme Court jurisprudence. That question is whether a federal court overseeing an equity receivership has the power to enjoin the claims of a minority of claimants (the Peterson Appellants) against the settling tortfeasor (appellees Chicago Title Company and Chicago Title Insurance Company (Chicago Title)) without the claimants' consent.

The panel's published opinion addressed an issue of first impression in this Circuit—that is, whether the Receiver in an equity receivership action can

7

condition a settlement with a Ponzi scheme's conspirator on the issuance of a Bar Order permanently extinguishing a few investors' independent, state-court claims against the conspirator. *See SEC v. Peterson*, 129 F.4th 599 (9th Cir. 2025). Notably, the Supreme Court has *never* affirmatively authorized federal receivership courts to issue bar orders as part of their broad equitable powers. To the extent the Supreme Court has addressed the non-consensual release of claims in other contexts, it has never allowed courts to extinguish a non-settling party's claims against a third party merely because they overlap in that they are traceable to the same transaction or injury. *See, e.g., Harrington v. Purdue Pharma*, 603 U.S. 204, 220–22 (2024) (reversing order approving settlement conditioned on the non-consensual release of some parties' claims against non-debtors related to the opioid epidemic under a bankruptcy statute's catchall provision and holding that bankruptcy courts may not extinguish claims against third parties without the consent of the affected claimants as a matter of due process); *Texas v. New Mexico*, 602 U.S. 943, 954–60 (2024) (rejecting consent decree resolving two states' claims against each other under a compact incorporating equitable apportionment principles to share the Rio Grande River's waters because it was impermissibly conditioned on extinguishing the federal government's claims under the same compact in violation of the principle that parties "who choose to resolve litigation through settlement may not dispose of the claims of a third party.").

8

Like the bankruptcy court in *Purdue Pharma*, this Court badly misjudged the extent of federal courts' traditional equitable authority when it permitted the non-consensual release of the Peterson Appellants' independent, non-derivative claims against Chicago Title, which impermissibly bought a release from its greater liability despite evidence of its substantial assets. Like the federal government's claims arising under the same compact as those of the states in *Texas v. New Mexico*, the Peterson Appellants' claims against Chicago Title were not entirely derivative of or a stand-in for the claims being settled by the Receiver merely because they arose from the same Ponzi scheme.

This binding precedent, which the Peterson Appellants submitted as supplemental authority, cannot be deemed inapplicable here merely because the cases arose in different areas of the law than equity receiverships, that is, bankruptcy and contract. As to *Texas v. New Mexico*, the compact giving rise to the settlement or consent decree required application of equitable apportionment principles analogous to equitable receivership principles.

As to *Purdue*, courts recognize both that bankruptcy and equitable receivership courts' authority to enter bar orders derives from parallels between them, and can be traced to Supreme Court jurisprudence in unrelated areas of the law. *SEC v. Stanford Int'l Bank*, 927 F.3d 830, 840–41 (5th Cir. 2019) ("Courts often look to the related context of bankruptcy when deciding cases involving

9

receivership estates"; the "purpose of bankruptcy receiverships and equity receiverships is 'essentially the same'"; and the "similarity between receiverships and bankruptcy cases reflects their shared legal heritage"); *SEC v. Cap. Consultants, LLC*, 397 F.3d 733, 745–46 (9th Cir. 2005) (bankruptcy law provides "analogous" line of cases in administrating receivership estates); *Matter of Zale Corp.*, 62 F.3d 746 (5th Cir. 1995) (citing civil rights case, *Local No. 93 v. City of Cleveland*, 478 U.S. 501, 529 (1986), to hold that bankruptcy court could not enforce a settlement prohibiting third-party bad faith insurance claims because the claims were not property of the bankruptcy estate).

Thus, there is a reasonable probability the Supreme Court will grant the Peterson Appellants' certiorari petition to address the substantial question whether *Peterson* conflicts with Supreme Court jurisprudence regarding the issuance of bar orders, satisfying the showing for a stay of this Court's mandate. *See United States ex rel. Chandler v. Cook Cnty.*, 282 F.3d 448, 450–51 (7th Cir. 2002) (staying issuance of the mandate where "the possibility of the Supreme Court's granting certiorari in this or another case raising the issue is not entirely insubstantial").

Notably, courts stay the mandate pending petitions for writ of certiorari where Supreme Court review seems unlikely on jurisdictional grounds or the movants' showing is far less compelling. *E.g., Munaf v. Geren*, 482 F.3d 582, 584 (D.C. Cir. 2007) (holding that courts lacked jurisdiction to hear petition for habeas

corpus brought by American citizen detained in Iraq by American military forces as part of the multi-national force and sentenced to death for kidnapping by an Iraqi court, but nevertheless staying issuance of the mandate pending resolution of petitioner's petition for writ of certiorari), vacated by *Munaf v. Geren*, 553 U.S. 674 (2008); *Books v. City of Elkhart*, 239 F.3d 826, 829 (7th Cir. 2001) (staying issuance of the mandate after balancing the "equities" even though the City did not make "a strong case that further review by the Supreme Court is warranted or that the Supreme Court will ultimately reach a decision different from the one reached in this court" and, in fact, presented "a weak case for a grant of certiorari.").

    B.    <u>There is a "significant possibility" the Peterson Appellants will prevail on the merits because, in addition to conflicting with relevant Supreme Court jurisprudence, this Court's opinion deepens a split between the circuits regarding the propriety of bar orders</u>

*Peterson* also deepens an existing conflict among the circuits regarding the equitable power of federal receivership courts to approve a settlement between the Receiver and a third-party tortfeasor that extinguishes the claims of individual objectors against the same tortfeasor without their consent. The Sixth Circuit squarely holds that federal receivership courts have no equitable power to enjoin such individual claims against a third party without consent based on traditional rules of equity. In stark contrast, the Fifth, Tenth, Eleventh, and now this Circuit permit federal receivership courts to extinguish such claims without consent using

various overlapping tests for when the claims are allegedly derivative or independent of the Receiver's claims against the same third party.

In *Digital Media Solutions, LLC v. South University of Ohio, LLC*, 59 F.4th 772 (6th Cir. 2023), the Sixth Circuit held that a district court overseeing an equitable receivership had no power to bar the claims of non-receivership entities against third party tortfeasors outside the receivership. *Id.* at 777. Based on its thorough consideration of the traditional rules governing equity receiverships, the Sixth Circuit rejected the argument that the Receiver's standing to sue the third-party tortfeasor gave it authority to release claimants' claims against the same third party. *Id*. at 778–80. The Court explained the fundamental unfairness of this argument as follows:

> Under the Receiver's view, then, a joint tortfeasor could sue an accomplice for the harms that they caused a third party and then 'settle' with the accomplice to eliminate their liability to the third party. That is quite wrong.

*Id*. at 784. Noting that the "real question" concerns who "owns" the claims to be extinguished, *id.* at 782, the Court concluded that the claims sought to be enjoined belonged to claimants, not the Receiver, *id.* at 784. The Court also rejected the Receiver's argument that the bar order was justified because the receivership was also harmed by the same third parties, explaining that "[j]ust because the same defendants allegedly cause harms to two parties does not make those harms the same." *Ibid.* Finally, the Sixth Circuit rejected arguments in reliance on the Fifth

12

and Tenth Circuit's decisions that the dependent or derivative nature of the claims to be extinguished justified the bar order, explaining that receivership courts lack the power to enjoin i*n personam* suits against the receivership debtor, let alone the non-receivership entities. *Ibid*. at 785–87.

By contrast, multiple federal Courts of Appeal, whom this Court has now joined, expressly permit receivership courts to extinguish claims held by non-receivership entities against non-receivership third parties without consent. For example, in *Zacarias v. Stanford International Bank, Ltd.*, 945 F.3d 883, 889 (5th Cir. 2019), a divided panel of the Fifth Circuit affirmed bar orders extinguishing third-party officers and directors' claims against non-receivership third-party entities related to defense and indemnification policies, reasoning that the enjoined were intertwined with and derivative of the Receiver's claims targeting the same proceeds subject to policy limits in settling with the underwriters on behalf of investors defrauded by the entities' scheme. Previously, the Tenth Circuit had reached the same conclusion as the Fifth, authorizing a nonconsensual bar order extinguishing third-party claims against non-receivership entities. *See SEC v. DeYoung*, 850 F.3d 1172, 1175, 1199 (10th Cir. 2017). Finally, the Eleventh Circuit has also authorized bar orders extinguishing third-party claims against non-receivership entities based on a two-part test requiring that the bar order is both

"essential" and "fair and equitable, with an eye toward its effect on the barred parties." *SEC v. Quiros*, 966 F.3d 1195, 1197 (11th Cir. 2020).

Thus, there is an undeniable 4-1 split among the federal appellate courts regarding the nonconsensual release of third-party claims as part of a settlement, that, coupled with the Supreme Court's related jurisprudence on this issue, makes both the review and reversal of this Court's decision a "significant possibility," thereby warranting the requseted stay.

**II. Good Cause Also Supports Staying the Mandate Because the Peterson Appellants Will Otherwise Face Irreparable Harm from the Likely Dismissal With Prejudice of the State-Court Actions that Are the Subject of the Bar Order Affirmed in this Court's Opinion**

The Peterson Appellants also meet the "good cause" prong of Rule 41(d)(2), which is established based on whether the "equities in the case" establish the need to preserve the status quo. Knibb et al., *Federal Court of Appeals Manual* § 34:13, at 924 (6th ed. 2013). Here, absent a stay, state court actions filed by the Peterson Appellants that are the subject of the Bar Order may be subject to dismissal with prejudice, which would render moot any relief the Peterson Appellants obtain via their petition for writ of certiorari. Such a showing of irreparable harm is sufficient to establish good cause. *Ibid.* (stay can be justified by showing "the irreparable harm that could result without one"). Moreover, a stay is also in the public interest to allow the Supreme Court to address the power of federal courts to extinguish

individual claimant's fundamental due process right to pursue claims that belong to them for injuries by third parties. *Books*, 239 F.3d at 829 (finding that the public interest justifies a stay). Accordingly, both the possibility of irreparable harm and the public interest establish good cause to warrant a stay of this Court's mandate. *See Times-Picayune Pub. Corp.*, 419 U.S. at 1305 (staying order restricting media coverage of trials for alleged rape and murder because "the possibility of irreparable harm is particularly troublesome," presenting "a fundamental confrontation between the competing values of free press and fair trial, with significant public and private interests balanced on both sides."). All the more so as there is no evidence that the stay is being sought to cause undue delay or that the certiorari petition being filed is frivolous.

## CONCLUSION

The Peterson Appellants meet Rule 41's "substantial question" and "good cause" standards, and request that this Court grant a 90-day stay of the issuance of its mandate pending their filing of their petition for writ of certiorari.

Dated: May 13, 2025          Respectfully submitted,

NIDDRIE ADDAMS FULLER SINGH LLP

By: *s/ Rupa G. Singh*
      Rupa G. Singh

*Attorneys for Appellants* KIM PETERSON *et al.*

## **CERTIFICATE OF COMPLIANCE**

I certify that, under Federal Rule of Appellate Procedure 27(d) and 32(a), as well as Circuit Rules 32-1 and 40-1, the Peterson Appellants' Motion to Stay the Mandate Pending the Filing of A Petition for a Writ of Certiorari is proportionately spaced, has a typeface of 14 points or more and contains 2,628 words according to word count function of the Microsoft Word program on which the Motion was produced, excluding the items exempted by Fed. R. App. P. 32(f).

Dated: May 13, 2025

Respectfully submitted,

NIDDRIE ADDAMS FULLER SINGH LLP

By: _s/ Rupa G. Singh_
      Rupa G. Singh

*Attorneys for Appellants* KIM PETERSON *et al.*

## CERTIFICATE OF SERVICE

    I am a citizen of the United States, over the age of 18, and not a party to this action. My business address is 501 West Broadway, Suite 800, San Diego, California 92130. I certify that, on May 13, 2025, I electronically filed APPELLANTS' MOTION TO STAY THE MANDATE PENDING FILING OF A PETITION FOR WRIT OF CERTIORARI with the Ninth Circuit Clerk of the Court by using the appellate CM/ECF system.

    I certify that all participants in the case are registered appellate CM/ECF users and that service will be accomplished by the appellate CM/ECF system on appellees' counsel of record.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed May 13, 2025, at San Diego, California.

                                                 *s/ Rupa G. Singh*
                                                   Rupa G. Singh